This is a suit for damages growing out of an intersectional collision between two automobiles. Plaintiff and defendants are asking for damages, each alleging the accident was caused by the negligence of the other. The lower court, in a well written opinion, has clearly set forth the issues and determined the case in favor of the plaintiff. Its opinion is as follows:
"Plaintiff in this matter has sued as a result of damages to his automobile resulting from collision at the intersection of North Second Street with Auburn Street in the City of Monroe, Parish of Ouachita, State of Louisiana, on the 4th day of February, 1942, between automobile owned by plaintiff and driven by his son, Jack Neel, and automobile owned by defendant and driven by his wife, Mrs. J.S. Bassett. Defendant denied all allegations attaching fault to his vehicle and reconvened as set out in the answer and reconventional demand. Stipulations are in the record admitting the extent and amount of plaintiff's demand and defendant's reconventional demand, therefore, this Court is called upon to decide the question of negligence only.
"In the City of Monroe, Louisiana, North Second Street runs north and south. Auburn Street runs east and west and intersects North Second Street at a place intermediate to DeSiard Street and Rochelle Street, North Second Street being by law a right-of-way street from DeSiard to Rochelle. In the record is Ordinance 2788 of the City of Monroe, governing the operation of motor vehicles in the City of Monroe. Section 35, paragraph `G' designates North Second Street as Grade `B' Street from DeSiard Street to Rochelle Street. Auburn Street is designated in paragraph `I' of said Section as a Grade `C' street for the reason it runs in an easterly and westerly direction and has not been otherwise designated in Ordinance 2788 as a Grade `A' or Grade `B' street. Paragraph `B' of Section 35 confers right-of-way upon all Grade `B' streets over Grade `C' streets in the following language, *Page 394 
to-wit: `(b) Vehicles traveling on streets designated hereinafter as Grade B streets shall have right-of-way over all vehicles entering or crossing them from any other street or place, except Grade A streets, and any person driving a vehicle into or across such Grade B street, except from Grade A streets, shall bring the vehicle to a full STOP at a point not more than fifteen feet from the said Grade B street and not proceed until he has ascertained that no vehicle is traveling said Grade B street sufficiently near to render collision or accident probable.'
"It is of particular importance to note that by the foregoing paragraph a vehicle about to enter or cross a Grade `B' street must not only be brought to a full stop at a distance not more than fifteen feet from the intersection, but as an added safeguard, he must not proceed until he has ascertained that no vehicle is traveling said Grade `B' street sufficiently near to render collision or accident probable. At the intersection of North Second Street and Auburn, where the collision occurred, vision is open and unobstructed for a safe distance in all directions, and especially northward from said intersection because of vacant lots on both north corners. The pavement is of asphalt and legible STOP signs are erected on both sides of North Second Street against traffic on Auburn street. Plaintiff's vehicle was proceeding southward on North Section Street; defendant's vehicle was proceeding westward on Auburn Street. Time 5:45 P.M., daylight.
"According to the testimony, plaintiff's car was moving at a speed of around 25 miles per hour, which seems to be borne out by the physical facts. When nearing the intersection of North Second Street with Auburn, plaintiff's son testified that he observed defendant's car was not complying with the right-of-way law requiring a full stop and yielding of right-of-way by vehicles moving from Auburn Street into North Second, and when within about five feet of said intersection, applied his brakes in an emergency effort to avoid collision with the Bassett car, and in so doing skidded his vehicle about eleven feet, but as the Bassett vehicle had entered the intersection, he collided with the rear fender of that vehicle, shoving it around to the northeast corner of the intersection, the Neel car stopping in the intersection, both cars upright, all of which tends to corroborate plaintiff's contention of not over 25 miles speed. As this Court views the case, the extent of skid marks of the Neel car, only eleven feet, not only indicates that this car was not being driven in excess of the speed limit, but shows that an effort was made to avert the collision. Officer Walker, of the Monroe Traffic Police, who arrived at the scene of the accident about 15 minutes after it happened, measured the length of the skid marks made by plaintiff's vehicle on the pavement and stated them to be 21 feet in length, but to determine the actual distance the vehicle skidded, from the total length of the skid marks must be deducted the length of the vehicle producing the skid marks which, considering the average size vehicle, is not less than ten feet, hence plaintiff's vehicle actually skidded not over eleven feet. Mrs. Bassett testified that she stopped before proceeding across the intersection, but shortly after the accident, when she had gone to her residence at 600 Rochelle Street, Officer Walker of the Monroe Traffic Police, called at her home and was told by her that she did not know whether or not she had stopped before the intersection was entered by her.
"The `Stop' law of the City of Monroe requires of the motorist a complete cessation of movement of the vehicle's wheels and specifically warns against a mere slowing down and changing of gears as insufficient to comply with the STOP law. (Definition of `Stop' Ordinance 2788, Section 1, page 3) It is clear to this Court that had the plaintiff's vehicle been only 150 feet distant at the point Mrs. Bassett says she first saw it, and had been coming at a greater speed than 25 miles per hour, and had Mrs. Bassett brought her vehicle to a complete standstill, as required by law, plaintiff's car would have cleared the intersection before the Bassett vehicle could have gotten into it to collide, for the reason that at a speed of 25 miles per hour a vehicle travels 37 feet in a second, and recognizing that a vehicle approaching a right-of-way street and fully complying with the STOP law, must of necessity consume three or four seconds of time from the instant of stopping, shifting gears and again accelerating the vehicle into motion.
"Viewing the evidence in the record and the law as contained in Ordinance 2788 of the City of Monroe, as hereinabove quoted, this Court believes that Mrs. Bassett was negligent, even if she did stop as claimed (about which fact there is serious question) for the reason that plaintiff's vehicle *Page 395 
was too close to the intersection at that moment to give her sufficient time to enter the intersection without peril. Her duty, seeing as she says she did, plaintiff's vehicle at such short distance from the intersection coming at a fast speed, was to have remained stopped as the law directs until the Neel car had passed. Therefore, this Court believes the proximate cause of the collision was Mrs. Bassett's negligence and although young Neel's testimony on the matter of speed of his vehicle is somewhat indefinite, we believe the physical facts plainly indicate that his vehicle was not moving faster than 25 miles per hour. Having known young Neel all his life, this Court knows him to be a truthful young gentleman, and it is our belief that he placed the `ceiling' on his speed in his statement of `not over' 35 miles per hour but believe it was around 25, simply through a sincere desire to be truthful, since he had not looked at his speedometer and naturally any statement made as to actual speed would be more or less a matter of guesswork, as so many people have very vague ideas as to the speed of their vehicles (or at least that is what hundreds have told this Court when they come to us with their speeding tickets.)
"For the reasons assigned, judgment for plaintiff as prayed for, rejecting reconventional demand of both defendants."
Defendants contend here that the lower court was in error in finding that plaintiff's car was not exceeding the speed limit of 25 miles per hour. The only testimony relative to the speed of plaintiff's car was given by plaintiff's son, who was operating the car, and although he had placed a maximum speed of 35 miles per hour for the car as he neared the intersection, he was consistent in maintaining that he was not exceeding 25 miles per hour. The lower court found that the physical facts corroborated his belief that the car was not exceeding the speed limit. We find no error in this finding of fact.
Defendants also contend that their car had pre-empted the intersection and was, therefore, entitled to the right-of-way. This contention is based upon the testimony that the collision occurred in the northwest corner of the intersection. A careful reading of the testimony shows that plaintiff's car entered the intersection near its center, due to rough pavement on the west side. Plaintiff's car was traveling south and defendant's car west and plaintiff's car skidded into the rear side of defendant's front end near the center of the intersection. The intersection was approximately 30 feet square. Both cars were traveling at approximately the same speed and it follows therefore that defendant's car entered the intersection only a fraction of a second before plaintiff's car did, and at a time when plaintiff's car was not more than 10 or 15 feet distance from the intersection. The driver of defendant's car and her sister both testified the car was brought to a stop before entering the intersection. If so, it was gross negligence for the driver not to have remained at a standstill until plaintiff's car, on the preferred street, had negotiated the intersection and was gross negligence to drive the automobile into the intersection when plaintiff's car was so near thereto. The law and jurisprudence of this State do not grant immunity to one who pre-empts an intersection under the conditions above set forth.
If, on the other hand, defendant's car was not brought to a stop before entering the intersection, the driver was grossly negligent and her failure to stop was the proximate cause of the accident. The driver of plaintiff's car had the right in law to presume that defendant's driver would observe the law. The testimony shows conclusively and he acted on that presumption and as soon as he could know that the driver of defendant's car was not going to observe the law, he applied his brakes and skidded into the intersection and defendant's car. If defendant's car was brought to a stop and then started again when plaintiff's car was so close to the intersection, it was negligence, and if defendant's car was not brought to a stop, it was negligence, and in either instance the negligence was the proximate cause of the accident.
We find no error in the judgment of the lower court and it is affirmed, with costs. *Page 473